**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| QUOC THAI MINH THUY,<br><br>        Petitioner,<br><br>v.<br><br>JASON STREEVAL, *in his official capacity as Warden of Stewart Detention Center*,[1] KRISTEN SULLIVAN, *in her official capacity as ICE Atlanta Field Office Director*, TODD LYONS, *in his official capacity as Acting Director of ICE*, MARKWAYNE MULLIN, *DHS Secretary*, and TODD BLANCHE, *U.S. Attorney General*,<br><br>        Respondents. | Civil Action No.<br>1:26-cv-00633-VMC-JEM |

**ORDER**

This matter is before the Court on Petitioner Quoc Thai Minh Thuy's Amended Petition for a Writ of Habeas Corpus ("Petition," Doc. 3). The Court held a video hearing under 28 U.S.C. § 2243 on May 7, 2026 during which Petitioner and his wife, Tran K testified. (Doc. 14). The Court held a subsequent video hearing on May 14, 2026 where ICE Deportation Officer Horace Belafonte testified. (Doc. 17). After the hearings, the Court took the matter under advisement. This Order

---

[1] Pursuant to the Court's May 1, 2026 Order (Doc. 7), Jason Streeval, in his official capacity as Warden of Stewart Detention Center, is automatically added as a party.

constitutes the Court's disposition of the Petition under Section 2243. For the reasons that follow, the Court grants the Petition.

## Background[2]

### I.    Petitioner's history in the United States

Petitioner is a Vietnamese national who entered the United States lawfully in 1991, through the Humanitarian Operation refugee program and has lived in this country for more than three decades. (Doc. 3 ¶ 15). In 1998, Petitioner was convicted of a criminal offense. (*Id.* ¶ 26). As part of the conviction, a judicial order of removal was entered in 1999. (*Id.*). Petitioner was released from criminal custody in 2012. (*Id.*). The U.S. Government was unable to effectuate his removal, however, because Vietnam would not issue travel documentation as the Court discusses below. (*Id.*).

Since his release, Petitioner has remained in the community under an Order of Supervision ("OSUP") and has consistently complied with all ICE reporting and supervision requirements for over a decade. (*Id.* ¶ 27). During this time, ICE has authorized him to work through regularly renewed employment authorization, reflecting the agency's longstanding decision to allow him to live and work in the community. (*Id.*). Throughout this period, ICE has kept Petitioner under supervision rather than detention. (*Id.* ¶ 28). Recently, however, ICE escalated

---

[2] Quotation marks from Petition excerpts are omitted to improve readability.

Petitioner's supervision by placing him on electronic GPS ankle monitoring during his September 2, 2025 check-in. (*Id.*). He was not provided with any explanation for the change in supervision level or by what need or authority he was put under heightened supervision. (*Id.*). On April 30, 2026, Petitioner appeared for a routine ISAP reporting appointment. (*Id.*). At that routine check-in, ICE and/or its agents detained him without any advance notice. (*Id.*).

ICE Deportation Officer Horace Belafonte served Petitioner with a Notice of Revocation of Release on April 30, 2026. ("Notice," Doc. 8-5). The Notice, signed earlier that day by Detention and Deportation Officer Jessie Gonzalez, ICE Headquarters Removal Management Division, checked the box indicating that Petitioner's OSUP was revoked pursuant to 8 C.F.R. § 214.4(l) — not pursuant to 8 C.F.R. § 241.13(i). The Notice checked the boxes under that box indicating the reason for revocation was that "[i]t is appropriate to enforce the removal order entered against you as ICE has the ability and means to effectuate your removal" and that "ICE is seeking a travel document to effect your expeditious removal to Vietnam." (*Id.*).

## II.    U.S.–Vietnam relations regarding deportations

Under the 2008 U.S.–Vietnam Repatriation Agreement, officially titled Vietnam (08-322) – *Agreement on the Acceptance of the Return of Vietnamese Citizens*, the Government of Vietnam agreed to accept for repatriation only those nationals

who arrived in the United States on or after July 12, 1995. (Doc. 3 ¶ 32). The agreement explicitly excludes all Vietnamese citizens who entered prior to that date, stating: "Vietnamese citizens are not subject to return to Vietnam under this Agreement if they arrived in the United States before July 12, 1995, the date on which diplomatic relations were re-established between the U.S. Government and the Vietnamese Government." (*Id.*). Petitioner entered the United States as a refugee in March, 1991, more than 4 years before the cutoff date. (*Id.*). Consequently, Vietnam has refused to issue travel documents for individuals in Petitioner's position for nearly two decades, rendering removal practically and legally impossible under the governing bilateral framework. (*Id.*).

In November 21, 2020, the United States and Vietnam signed a Memorandum of Understanding (MOU) creating a process for deporting people who came to the United States before 1995. (*Id.* ¶ 33). Petitioner claims, however, that "deportations back to Vietnam are still severely limited either because Vietnam would not issue travel documents or agree to accept them." (*Id.*).

## Discussion

The Petition raises seven causes of action: Count I for Violation of the Fifth Amendment—Substantive Due Process, Count II for Violation of the Fifth Amendment—Procedural Due Process, Count III for Violation of the Administrative Procedure Act—Contrary to Law and Constitutional Right, Count

4

IV for Violation of Administrative Procedure Act—Arbitrary and Capricious, Count V for Violation of Administrative Procedure Act—In Excess of Statutory Authority, Count VI for Ultra Vires Action, and Count VII for Violation of the *Accardi* doctrine. Among other relief, Petitioner seeks an order immediately releasing Petitioner from ICE custody and restoring him to his prior OSUP and enjoining Respondents from re-detaining Petitioner unless and until Respondents provide advance written notice, identify lawful and individualized reasons for detention, provide a meaningful opportunity to respond, and comply with all applicable statutory, regulatory, constitutional, and agency-procedure requirements. (Doc. 3 at 69–70).

The Court begins with Petitioner's claims under the Administrative Procedure Act (APA), which are ultimately dispositive. Judicial review of agency action is available in a habeas corpus proceeding. 5 U.S.C. § 703. More specifically, "[s]ection 2241 authorizes federal courts to hear challenges to immigration detention." *Grigorian v. Bondi*, No. 25-cv-22914, 2025 WL 2604573, at *7 (S.D. Fla. Sep. 9, 2025) (citing *Zadvydas*, 533 U.S. at 687). Under *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954), an agency must abide by its own regulations. *Gonzalez v. Warden*, No. 2:26-cv-274, 2026 WL 860574, at *2 (M.D. Fla. Mar. 30, 2026) (quoting *Chevron Oil Co. v. Andrus*, 588 F.2d 1383, 1386 (5th Cir. 1979)). "[A]gency deviation from its own regulations and procedures may justify

5

judicial relief in a case otherwise properly before the court." *Id.* (quoting *Jean v. Nelson*, 727 F.2d 957, 976 (11th Cir. 1984)).

## A.    Respondents' Alleged Failure to Follow Procedure

Petitioner's APA claims all boil down to whether Respondents complied with the applicable regulations governing revoking an OSUP. And here, there is some agreement between the parties that the Respondents erred procedurally. The Notice purporting to terminate Petitioner's OSUP checked the box indicating that Petitioner's OSUP was revoked pursuant to 8 C.F.R. § 214.4(l) and not pursuant to 8 C.F.R. § 241.13(i). (Doc. 8-5). Respondents concede this was likely wrong, explaining:

> The two regulations set different standards for who can revoke release. Under § 241.4, the decision to re-detain an alien is committed to the discretion of the Executive Associate Commissioner. See § 241.4(l)(2). The decision can also be made by a district director, provided that the district director first determines that revocation of release "is in the public interest and circumstances do not reasonably permit referral of the case to the Executive Associate Commissioner." *Id.* Under § 241.13, the decision to revoke release is not dedicated to any particular agency official and instead can be made by "the Service" in general.

(Doc. 9 at 16). Respondents concede that the signature of Detention and Deportation Officer Jessie Gonzalez was not sufficient under § 214.4(l). However, this error does not require Petitioner's immediate release because had Respondents checked the correct box (for revocation under § 241.13), it would be

6

indisputable that Officer Gonzalez had authority to issue the notice, and Officer Belafonte testified that he would not have changed any aspect of his interview with Petitioner had the proper box been checked. *See Betancourt v. Warden*, No. 2:26-CV-307, 2026 WL 914792, at *5 (M.D. Fla. Apr. 3, 2026) ("[T]he natural remedy for a procedural shortcoming is a procedural fix. When an agency skips a step in its own rulebook, the typical judicial response is to force the agency to go back and do its job right—not to throw open the jailhouse doors."); *see also Cruz Medina v. Noem*, 794 F. Supp. 3d 365, 382 (D. Md. 2025) ("As to this component of Petitioner's *Accardi* claim, Mr. Cruz Medina has not pointed to authority showing that the remedy for a violation of this regulation (if such a violation has occurred) is release from detention."). Accordingly, the Court finds that Petitioner was accorded all of his procedural rights under § 241.13.

> ### B.    Respondents' Alleged Failure to Substantively Comply with its own Regulations

Nonetheless, the Court finds that Respondents failed to meet their substantive burden under § 241.13(i), which entitles Petitioner to release. The parties agree that the probable basis of Petitioner's original OSUP was a determination that there was no significant likelihood of his removal to Vietnam in the reasonably foreseeable future. (*See* Doc. 3 at 13; Doc. 9 at 1, 17). Where this is the case, § 241.13 explains that such a situation brings the non-citizen within its ambit:

> **Scope.** This section establishes special review procedures for those aliens who are subject to a final order of removal and are detained under the custody review procedures provided at § 241.4 after the expiration of the removal period, **where the alien has provided good reason to believe there is no significant likelihood of removal to the country to which he or she was ordered removed, or to a third country, in the reasonably foreseeable future**.

8 C.F.R. § 241.13(a) (emphasis added).

Subsection 241.13(i), paragraphs (2) and (3) lay out the procedure for revoking an OSUP for an alien released under those circumstances based on changed circumstances. Paragraph (2) provides that ICE "may revoke an alien's release under this section and return the alien to custody if, on account of changed circumstances, the Service determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(2). "Upon revocation," the paragraph (3) provides, "the alien will be notified of the reasons for revocation of his or her release" after which ICE "will conduct an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification." 8 C.F.R. § 241.13(i)(3). At the interview:

> The alien may submit any evidence or information that he or she believes shows there is no significant likelihood he or she be removed in the reasonably foreseeable future, or that he or she has not violated the order of supervision. The revocation custody review will include an evaluation of any contested facts relevant to the

8

revocation and a determination whether the facts as determined warrant revocation and further denial of release.

*Id.*

Petitioner makes two primary arguments regarding these provisions. First, that before revoking an OSUP, Respondents must prove a change in circumstances from the issuance of the OSUP. Second, Respondents must determine that on account of that change in circumstances, there is a significant likelihood that the Petitioner may be removed in the reasonably foreseeable future. Petitioner argues that Respondents failed with respect to both of these steps.

### 1.   Change in Circumstances

First, change in circumstances. Respondents argue that the 2020 MOU constitutes a change in circumstances. (Doc. 9 at 1). Petitioner, in turn, contends that the change in circumstances must be individualized to the noncitizen. (Doc. 12 at 26). The word "individualized" does not appear in 8 C.F.R. § 241.13(i), and the origin of this requirement appears to be the from the First Circuit's decision in *Kong v. United States*, 62 F.4th 608, 619–20 (1st Cir. 2023) ("ICE's decision to re-detain a noncitizen like Kong who has been granted supervised release is governed by ICE's own regulation requiring (1) an individualized determination (2) by ICE that, (3) based on changed circumstances, (4) removal has become

significantly likely in the reasonably foreseeable future.") (citing 8 C.F.R. § 241.13(i)(2)).

Courts outside the First Circuit have rejected this approach, including courts within this circuit. For example, one court opined that the First Circuit "grabbed a demanding checklist from" another part of the regulation that "has nothing to do with revoking supervised release" and "grafted it onto the revocation process." *Tran v. Warden*, No. 2:25-CV-1224, 2026 WL 672969, at *8 (M.D. Fla. Mar. 10, 2026) (citing 8 C.F.R. § 241.13(f)). The provision that court was referring to, § 241.13(f), "governs something else entirely — the agency's process for evaluating an alien's initial request for release and determining if there is a significant likelihood of removal in the first place." *Id.*

The court in *Rodriguez Romero v. Ladwig*, No. 25-cv-1106, 2026 WL 321437, at *6 (M.D. La. Feb. 6, 2026) struck the cleanest balance between making the changed circumstances requirement do actual work and avoiding a reading that overly restricts the government. The Court, while purporting to follow *Kong*, recognized that "a broad change in circumstance can, indeed, be the change that merits an individualized finding that deportation has become significantly likely." *Id.* It noted that while "a broad policy may constitute a changed circumstance that affects an entire class, such a change does not necessarily make deportation 'significantly likely' for every individual in the class." *Id.* ("For example, improved

diplomatic relations with Cuba could make it generally more likely that Cuban detainees might be deported there. But, if Cuba were accepting only those Cuban national deportees with no criminal record, then the Cuban Petitioners here would be no more likely to be removed to Cuba than before diplomatic relations improved."). Essentially, the dispute between these courts boils down to whether emphasis is placed on "change in circumstances" or "significant likelihood that the Petitioner may be removed in the reasonably foreseeable future."

To avoid reading "changed circumstances" out of the regulation, the Court agrees that some material development applicable to the noncitizen must have occurred between the granting of the OSUP and the revocation. But at this first step, the Court does not agree with Petitioner that the change in circumstances must be individualized to such a degree that ICE must have a visa and a plane ticket for the noncitizen before even detaining him. The 2020 MOU did not exist at the time of Petitioner's OSUP and it is a material development because it bears directly on the reason Petitioner was granted the OSUP in the first place: Vietnam would not accept his repatriation. This change in circumstances was at least enough to permit Respondents to begin the process of custody review under 8 C.F.R. § 241.13(i). Having met that requirement, Respondents must next determine there is a "significant likelihood that the Petitioner may be removed in the reasonably foreseeable future." Here, the Court departs from Respondents' view.

### 2.    Likelihood of Petitioner's Future Removal

Respondents cannot simply point to the MOU and detain Petitioner indefinitely. Respondents must determine that on account of that change in circumstances, there is a significant likelihood that the Petitioner may be removed in the reasonably foreseeable future. Assuming Respondents made such a determination, the threshold question is how the Court reviews such a determination.

Petitioner argues that Respondent has the burden of proof as to this issue in a habeas proceeding; Respondent does not argue otherwise so the Court assumes this is true. *See Van Tran v. Hyde*, No. 25-CV-12546, 2025 WL 3724853, at *2 (D. Mass. Dec. 24, 2025) ("Courts, both those interpreting *Kong* and those analyzing § 241.13 independent of *Kong*, generally place a burden on ICE to prove that removal is significantly likely in the reasonably foreseeable future as to that particular person.").

Assuming that Respondent has the burden, the next question is how much deference Respondent's determinations about the likelihood of Petitioner's imminent removal are owed in meeting that burden. For example, one court has opined that that "[t]o the extent this Court has any role in questioning that operational judgment, our posture must be highly deferential." *Tran v. Warden,*

12

*Fla. Soft Side S. Det. Ctr.*, No. 2:25-CV-1224-KCD-NPM, 2026 WL 672969, at \*8 (M.D. Fla. Mar. 10, 2026).

While the Court agrees that Respondents may be entitled to some deference in appropriate cases, the record does not provide support for any deference here. Under general administrative law, "de novo review is authorized when the action is adjudicatory in nature and the agency factfinding procedures are inadequate." *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415 (1971). Here, Officer Belafonte testified that Petitioner was detained at a routine check-in and was not afforded advanced notice that he would need to be prepared to provide argument or evidence at the revocation custody review interview that took place the day he was detained. He also testified that the rationale for Petitioner's future likelihood of removal the Court was given in this proceeding was not provided to Petitioner at the interview. Instead, he simply testified that he read the Notice of Revocation to Petitioner and asked him if he had any response. Finally, Officer Belafonte testified that Petitioner's attorney was not present at the interview and that when she called, Officer Belafonte would not provide her any details of the revocation. Under these circumstances, Respondents have given the Court no basis for deferring to Respondents' determinations made prior to the filing of the Petition.[3]

---

[3] The Court does not hold that revocation under § 241.13(i) *requires* pre-detention notice, a preview of the factual basis for ICE's determinations, and a right to counsel at the interview. Instead, the Court only holds that providing some or all

Respondents must therefore provide some evidence in this proceeding establishing "a significant likelihood that [Petitioner] may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(2).

One example of how Respondents can satisfy this burden is set forth in *T.C.T. v. Warden*, No. 4:25-CV-373, 2025 WL 4648417, at *6 (M.D. Ga. Dec. 22, 2025), *report and recommendation adopted in part, rejected in part*, 2026 WL 493471 (M.D. Ga. Feb. 23, 2026). In that case, the court explained that "the respondent must show some particularized evidence that the petitioner was likely to be removed, not general policies." *Id.* While merely citing the 2020 MOU was not enough, providing "evidence as to how many travel document requests were made in 2025 and ultimately granted" and "identif[ing] what concrete steps ICE has taken to process [the petitioner's] particular travel document" sufficed. *Id.* (second alteration in original).

In contrast, ICE was found to have not met this burden in *Nguyen v. Hyde*, 788 F. Supp. 3d 144, 152 (D. Mass. 2025). That court agreed that the 2020 MOU was not enough to establish a significant likelihood of future removal in the reasonably

---

of these measures would entitle Respondents' conclusions to more deference on review.

Moreover, even if *some* deference was owed, the cursory nature of Respondent's review under § 241.13 here would not alone be sufficient to meet Respondent's burden.

foreseeable future, noting that "under the 2020 MOU . . . DHS may only request [the petitioner's] removal; Vietnam has total discretion whether to issue a travel document to any individual. *Id.* at 151. But even when presented with evidence that "44 individuals were removed to Vietnam in Fiscal Year 2024, and that 284 have been removed thus far in Fiscal Year 2025," the court still held that this standard was not established, because the statistics did not include information about how many total requests were made, and how many of the 328 individuals removed during Fiscal Years 2024 and 2025 were pre-1995 Vietnamese refugees," like Petitioner here. *Id.* at 151. Finally, ICE's evidence that it was processing a travel document for the petitioner was not enough because it did not establish "whether or when [the petitioner's] request was submitted to Vietnam, whether Vietnam has even acknowledged receipt of the request or otherwise responded to [the] request, or the anticipated wait time for a response from Vietnam." *Id.* at 152.

Here, Respondents have not met their burden of establishing a significant likelihood of removing Petitioner in the reasonably foreseeable future. Officer Belafonte testified that he received correspondence that there would be Vietnamese flights going out from headquarters, and that he was instructed to review everyone on his docket with a final order. He identified Petitioner as having a final order and noted that Petitioner had a check-in scheduled. Those facts formed the basis of the decision to detain Petitioner on April 30, 2026.

15

Respondents did not submit documents for translation until May 4 (Doc. 8 ¶ 16), and Officer Belafonte testified that the travel document request for Petitioner was not submitted to ICE headquarters until May 10. There is no evidence that anything has been submitted to Vietnam yet.

In Officer Belafonte's declaration, he averred that "[r]emovals to Vietnam have significantly increased since fiscal year 2024 during which ICE removed 58 Vietnamese nationals from the U.S. including 1 Vietnamese national who entered the U.S. prior to 1995, 55 who entered after 1995, and 2 with unknown entry dates." (Doc. 8 ¶ 12). For fiscal year 2025, "ICE/ERO removed a total of 699 individuals to Vietnam, 102 who entered the U.S. prior to 1995, 458 who entered after 1995, and 139 with unknown entry dates." (*Id.* ¶ 13). And, "in fiscal year 2026, ICE/ERO has removed 1,389 individuals to Vietnam, 213 who entered the U.S. prior to 1995, 875 who entered after 1994, and 301 with unknown entry dates." (*Id.* ¶ 14). At the hearing, however, Officer Belafonte revealed that these numbers were not based on his first-hand knowledge and acknowledged that not all Vietnamese nationals get travel documents. Without information about how many requests are denied, or pending awaiting a response from Vietnam, these numbers alone are not sufficient evidence to establish a significant likelihood of removing Petitioner in the reasonably foreseeable future.

When all of this is considered against the background that, as Officer Belafonte testified, Respondents have attempted and failed to obtain travel documents for Petitioner in the past, any possibility of removal at this point is speculative at best. Accordingly, the Court will grant Petitioner's release.

## C. Additional Remedies

Petitioner additionally requested an order prohibiting re-detention absent strict compliance with all regulations, a meaningful notice and opportunity to respond, and individualized evidence of changed circumstances showing a significant likelihood of removal in the reasonably foreseeable future. Respondents dispute the Court's authority to enter such remedial measures beyond Petitioner's release and restoration to his OSUP. Without reaching the question of the Court's authority to order such measures, the Court agrees that the measures are unwarranted here for two reasons. First, because the Court cannot enter an injunction that just tells the government to "follow the law." *Elend v. Basham*, 471 F.3d 1199, 1209 (11th Cir. 2006). Second, if Petitioner is re-detained in another jurisdiction, the Court's grant of relief here is res judicata absent some change in circumstances such as the actual issuance of travel documents. *Griggs v. United States*, 253 F. App'x 405, 410 (5th Cir. 2007); *see also In re Crow*, 483 P.2d 1206, 1214 (Cal. 1971) ("The social policies which underlie the doctrine of res judicata and the high purpose of the writ of habeas corpus also conjoin in barring a

governmental attempt to relitigate the grant of relief in habeas corpus."); Wright & Miller, 18 Fed. Prac. & Proc. Juris. § 4425 (3d ed.) ("Preclusion should not apply if there has been a change either in the facts or the governing rules.") (note omitted)

## Conclusion

For the reasons the Court gave above, it is

**ORDERED** that the Amended Petition for a Writ of Habeas Corpus (Doc. 3) is **GRANTED**. Respondents are **DIRECTED** to release Petitioner Quoc Thai Minh Thuy within 24 hours of the entry of this Order and to promptly file a certificate of compliance within 48 hours after his release.

**SO ORDERED** this 18th day of May, 2026.

_____

Victoria Marie Calvert
United States District Judge

18